ROBERTS v. AMERICAN FIRE & CASUALTY CO.

Civ. No. 944.

United States District Court
M. D. Tennessee, Nashville Division.

April 10, 1950.

Stout & Porter, and W. M. Daniel, Jr., of Clarksville, Tennessee, for plaintiff.

Cate & Cate, of Nashville, Tennessee, for defendant.

DAVIES, District Judge.

This cause came on for hearing before the Court on August 22, 1949.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its findings of Fact and Conclusions of Law, as follows:

Findings of Fact

1. That on or about the 25th day of August, 1945, the defendant American Fire & Casualty Company of Orlando, Florida, being authorized to do business in Tennessee, issued to plaintiff, Albert Roberts, a Negro taxicab operator of Clarksville, Montgomery County, Tennessee, a certain "Standard All Coverage Automobile Policy", No. 261877, under the terms of which the defendant among other things, agreed to protect and hold plaintiff harmless from all legal liability resulting from automobile accidents involving motor vehicles described in said policy, which might occur during the effective date of said policy; that the limits of liability provided for therein for bodily injury were $5,000 to each person injured, and $10,000 to all persons injured in any one accident, with a maximum limit of $5,000 for damage to the property of others; that under the further terms of said policy, the defendant agreed "to defend in his name and behalf any suit against the insured alleging such injury or destruction or seeking damages on account thereof even if such suit is groundless, false or fraudulent; but the Company shall have the right to make investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company".

2. That on or about July 4, 1946, during the period covered by said policy, one of plaintiff's taxicabs covered by such policy was involved in an accident in Montgomery County, Tennessee, in which accident one Eddie Lawrence Waller, a passenger in another car involved in said accident, sustained serious injury; that the defendant, by and through its duly authorized adjuster, Lewis Payne, an attorney of Nashville, Tennessee, by and with the assistance of the firm of Goodlett & Goodlett, Attorneys, of Clarksville, Montgomery County, Tennessee, who were employed by the said Payne to represent the defendant with him, investigated such accident, interviewed and secured statements from the occupants of the cars involved in the accident, procured a statement of injuries sustained by said Waller from Dr. W. E. Pannell, said Waller's physician, and in addition thereto secured a medical examination of said Waller by Dr. R. M. Workman, a physician of said City of Clarksville, Tennessee; that such statements of the parties involved in the accident and those of other witnesses obtained and procured by said adjuster and attorneys, indicating that plaintiff herein was legally liable to the said Eddie Lawrence Waller for the injuries which he had sustained in said accident, were forwarded to the defendant herein, and that with knowledge of the serious and possibly permanent injuries to said Waller and the liability therefor on the part of the plaintiff herein, the defendant made no serious effort at any time to negotiate a settlement with said Waller in behalf of the plaintiff, Albert Roberts.

3. That having before him the reports of physicians Dr. W. E. Pannell and Dr. R. M. Workman indicating the probability of serious permanent injury to said Waller, defendant, through its said adjuster and attorneys, did not pursue the investigation further, although such investigation would have disclosed further facts as to the extent of the seriousness of such injury.

4. That on September 1946, said Eddie Lawrence Waller instituted suit against the plaintiff herein, Albert Roberts, in the Circuit Court of Montgomery County, Tennessee, for the sum of $25,000, alleging he was permanently injured as a result of said plaintiff's negligence or that of his agent and servant; that upon a trial of this cause a jury verdict for $18,000 was returned in favor of said Waller and against the said

plaintiff herein, Albert Roberts, said sum being $13,000 in excess of the policy coverage under defendant's said policy.

5. That on the day the aforesaid trial started in the Circuit Court of Montgomery County, Tennessee, the attorneys for the said Eddie Lawrence Waller offered to settle both the claim and suit of said Waller and a companion suit brought by another occupant of the car involved in the accident for the sum of $4,750, and the defendant, through its said adjuster, Mr. Payne, made the statement that $3,000 was all that it would pay in both cases.

6. That on a motion for a new trial of the said Waller case, the trial Judge suggested a remittitur of $13,000, which was accepted under protest. Even then Mr. Payne, the adjuster for the defendant company, would not offer more than $3,500 in settlement of the case. Both the plaintiff and the defendant appealed to the Court of Appeals of Tennessee, which court reinstated the remittitur of $13,000 and affirmed the judgment of $18,000, and thereafter certiorari was denied by the Supreme Court of Tennessee in that case; that the defendant herein, American Fire & Casualty Company, thereupon paid on said judgment the sum of $5,000 and interest on the entire judgment, and the costs of that case, and the plaintiff herein, Albert Roberts, on May 24, 1948, paid the balance of $13,000 on said judgment.

7. That pending the appeal of said case from the Circuit Court of Montgomery County, Tennessee, and after the judgment had been reduced to $5,000 by the action of the trial judge in suggesting the remittitur of $13,000, the plaintiff herein offered to contribute the sum of $1,500 towards a settlement of the matter, but Mr. Lewis Payne, acting for the defendant, refused to contribute more than $3,500, which total sum amounting to $5,000 was not acceptable to the attorney for said Waller.

8. That in making the investigation, interviewing witnesses, participating in negotiations, preparing for and assisting in the trial of said case in the Circuit Court of Montgomery County, Tennessee, and in the handling of all matters in connection therewith in behalf of the plaintiff herein, the firm of Goodlett & Goodlett, composed of Collier Goodlett, Sr., and Collier Goodlett, Jr., Attorneys, of Clarksville, Montgomery County, Tennessee, acted as attorneys and representatives of the defendant herein, American Fire & Casualty Company, and not in any manner for the plaintiff, Albert Roberts, personally.

9. The events transpiring after the accident and immediately prior to the trial of the case in the Circuit Court of Montgomery County, Tennessee, are a sad commentary on the regard, or light regard, that is entertained by some lawyers and some of the trial courts of this state regarding the rights of its Negro citizens. It has crept into the record in one way or another that here was a case where one Negro man was suing another Negro man, and that the plaintiff being a Negro the case wasn't worth over $3,500 in any event. That Tennessee Courts don't give substantial judgments in cases where the parties are Negroes. The Court has received that impression throughout the trial of this case from events that transpired and statements made by witnesses, and necessarily finds that the fact that the plaintiff in the damage suit in Montgomery County, Tennessee, was a Negro did enter into the fact that no larger amount was considered by the defendant company in payment of liability in this case; and another instance of this sort of prejudice is the fact that the plaintiff in this case who is a negro and who was defendant in the damage suit in Montgomery County, was a rather successful Negro. He had built up a good business and was thought to have some money, and this was well known in Montgomery County where he resides and where the trial was before a jury of Montgomery County citizens. It has crept into the record that one of the main reasons the Montgomery County jury gave such a large judgment against him was on account of the fact that he was a Negro, and had accumulated property, and that there was prejudice existing against him on the part of the jurors.

10. After Mr. Payne made his first trip to Clarksville and took some statements, he suggested that examination of Waller be made by a competent white physician

830

due to the fact that the physician treating the plaintiff Waller was also a colored man. This fact is rather significant to the Court because the Negro physician too testified in the case tried in the Circuit Court of Montgomery County, Tennessee. Mr. Payne did not know until Dr. Pannell testified on trial of the damage suit in Montgomery County, that Waller, the injured man, had been in Meharry-Hubbard Hospital in Nashville, Tennessee.

The white doctor made a report to the insurance company that he had made a complete examination of Waller. That he found no remaining external evidence of his trouble, "However, after carefully examining him, I do believe him to have a possible spinal injury causing some pressure on the sciatic nerve with resulting weakness and pain in the lumbar region radiating down the right leg back of the knee joint. This would cause some degree of disability from a few months to a year, at least. Another X-ray of the spine might help to further complete the diagnosis and prognosis."

To any experienced lawyer, experienced in trying damage suits, an injury in the lumbar region should be a red flag and put him on notice that it was necessary to get all evidence possible of the extent of the injury, because such injuries are not only very serious but are sometimes very difficult to point out, or to obtain a definite opinion as to whether or not they are permanent or as to whether or not they will cause total and complete disability. It is a very uncertain matter, to say the least, and would serve to put any experienced lawyer on notice that it might be a very serious case. But even though the white doctor recommended that other X-rays be made of the spine, no steps were taken in that direction, and no further examination of the plaintiff Waller was made before the trial of the case in Montgomery County, and no efforts were made to settle the case.

Mr. Goodlett, Jr., who was in Nashville one time before the case was tried in Montgomery County, talked to Mr. Payne about the case and told him that he might be able to settle the case for $3,000, but Mr. Payne indicated that he was not interested in such settlement.

11. Mr. Payne was in active direction of the case for the defendant company. He directed the actions of the local counsel, Goodlett & Goodlett. They were given no authority whatever to settle. They only did what they were instructed to do by Mr. Payne, and their actions in this case were more or less mechanical.

The point is made that if Mr. Payne was guilty of any negligence in this case it was only in the exercise of bad judgment or mistaken judgment and that he did the best he could with the facts he had before him; that he did not know about the facts and extent of Waller's injuries and was surprised to learn all the facts from Dr. Pannell's testimony on the day of the trial of this case. It is impossible to understand how Mr. Payne could fail to know these facts unless he was negligent. That goes back to the first medical report that was furnished by Dr. Pannell. It is argued that Mr. Payne did not know that Waller had been in Meharry-Hubbard Hospital. All he had to do to find out was to look at the first medical report that was issued to the defendant insurance company by Dr. Pannell which reads in part as follows: "My name is Dr. W. E. Pannell. I am a practicing physician in the city of Clarksville * * *," etc. "I attended Ed Waller as a result of injuries he received in a collision * * *," etc. "Now, the first day I saw him, I had him committed to Meharry-Hubbard Hospital, Nashville, Tennessee." Mr. Payne was bound to know, if he read the statement, that the plaintiff had been committed to Meharry-Hubbard Hospital, and if he did not read it he was negligent. Mr. Payne did not go to Meharry Hospital and interview any of the doctors or see any of the reports or X-rays at all. The report further states: "Ed Waller received a heavy concussion and compression of the brain together with a spinal injury which has caused paralysis of the right leg from the hip down. Patient has lost the use of his right leg at this time. It is my opinion that there is going to be a permanent disability to the leg.

Patient has two fractured ribs together with internal injuries. Blood passed at first as a result of injuries, internal, and we are unable at this time to determine the extent of his internal injuries. I have prescribed and directed rest in bed, a special diet, sitz baths and internal medication."

"I am unable to give a statement on the amount of the doctors bill and hospital bill. Dr. Mathew Walker, who is associated with me on this case, is out of Nashville at this time and I will be unable to ascertain what our charges are until he returns."

Mr. Payne had notice right there that Dr. Walker had been called on the case and knew about the plaintiff Waller. In spite of that, he never interviewed Dr. Walker or asked him anything about the case.

Mr. Payne wrote to Goodlett & Goodlett shortly after the accident in question, while he was investigating the case, that it was his opinion the driver of Roberts' Taxi Cab, who was to be their own witness, was not telling the truth or was not telling all the truth about the accident. So, he had that impression about his own witness from the beginning. If he had that impression, he certainly made a perfunctory examination of the facts in this case in the light of the situation as it is now. It necessarily follows that this was not a case of mistaken judgment on the part of Mr. Payne; that it was not only a failure to consider, but a wanton disregard of the interest of the insured. All Mr. Payne was thinking about was settling the case for not more than $3,500, so he could save his client, the insurance company, some money. Bad faith is evidenced by hope of the insurance company, through its adjuster and agent, to escape payment in the full amount of the policy and in their utter disregard of the rights of the policy holder.

12. There was not any question but that there would be a recovery by Waller in the Circuit Court of Montgomery County, Tennessee. The only question was what would be the amount of the recovery. The facts were well known to the representative of the insurance company or should have been known to him, had he investigated fully.

Counsel for the insurance company who were associated with the adjuster in the defense of the case in the Circuit Court of Montgomery County, recognized the fact that there was probable liability in the case, and so advised the adjuster. Not only that, but the plaintiff in the Circuit Court of Montgomery County, Waller, was a passenger in one of the taxicabs of Roberts and it was not even claimed that he and the driver of the automobile were on a joint enterprise. Therefore, the rule as to contributory negligence would not apply to him. He was not responsible for any contributory negligence of the driver of the automobile involved in the accident in which he was riding; and that is another feature that bears on the liability of Roberts in the case in Montgomery County and another reason that it should have been settled.

Mr. Payne stated in conferences he had with counsel that it would be a needless ceremony to apply to the defendant company for authority to increase the amount he was authorized to pay in settlement of the case in Montgomery County, because the company had advised him it would not agree to pay more than $3,500 under any circumstances. Now, if that is true and if he did have those instructions from the company, then the bad faith and the negligence of the agent of the company is certainly imputed directly to the defendant company in this case, as he was apparently acting under its instructions.

From all the facts and circumstances proven in this case, I cannot escape the conclusion, and therefore find, that the plaintiff in this case, Albert Roberts, an old colored man, was not only being pushed around by the Court in Montgomery County, but also by the defendant insurance company in this case who was paid to represent his interest.

## Conclusions of Law.

1. The defendant company was guilty of negligence in its investigation of the case of Waller v. Roberts pending in the Circuit Court of Montgomery County, Tennessee.

2. The defendant company was guilty of negligence in failing to properly investigate that case and to learn of the extent of Waller's injuries.

3. The defendant company was guilty of bad faith in its investigation of the case of Waller v. Roberts when pending in the Circuit Court of Montgomery County, Tennessee.

4. The defendant company was guilty of bad faith in failing to properly investigate that case and learn of the extent of Waller's injuries.

5. The defendant company was guilty of bad faith in refusing to settle the plaintiff's liability for a reasonable sum at the time it had the opportunity to do so.

6. The plaintiff Roberts is entitled to recover of the defendant, American Fire & Casualty Company, the sum of $13,000 with interest from May 24, 1948, and the costs of this cause.

Judgment accordingly.